# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| LAWRENCE M. DRAYTON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV615-036 |
| | ) | CR612-018 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

After pleading guilty to conspiracy to possess with intent to distribute, and to distribute, cocaine, Lawrence Drayton moves under 28 U.S.C. § 2255 to vacate his conviction. Doc. 1102. He claims that (1) his plea agreement's collateral attack waiver denied him "the assistance of unconflicted counsel;" (2) the government "intentionally misrepresented . . . facts in order to obtain an indictment and ensure a guilty plea;" (3) his plea "was constitutionally unintelligent . . . because he was unaware of the consequences flowing from the plea-agreement waiver;" and (4) his attorney, Matthew Hube, "misunderstood the law" of career offender

sentence enhancements.[1] Doc. 1132 at 4. Review of the parties' briefing shows his motion should be denied.

I.  BACKGROUND

In April 2013, Drayton pled guilty to conspiracy pursuant to an agreement with the Government that contained direct appeal and collateral attack waivers. Doc. 788 at 6-7; doc. 949. An ensuing Presentence Investigation Report (PSI) designated him a career offender, assigned a total offense level of 29 and criminal history category of VI, and recommended a 151-188 month sentence. Drayton objected to his criminal history score, career offender enhancement, and the points added for his role in the offense. *See* doc. 762. The district judge ultimately overruled those objections, adopted the PSI's findings of facts and guidelines calculation, and sentenced him to 188 months' imprisonment. Doc. 797. Drayton appealed that sentence, but the Eleventh Circuit dismissed it because of his plea agreement's appeal waiver. Doc. 1016. He then timely filed the present motion. Doc. 1102.

---

[1] After the government responded to his original motion, Drayton moved to amend and add two new claims. Doc. 1132. The Court **GRANTS** the motion because doing so will not prejudice the Government. Neither new claim merits a response, much less an evidentiary hearing. The Court also **GRANTS** his motion to extend time to submit a reply brief. Doc. 1123. That brief has already been filed and its arguments will be considered.

## II. ANALYSIS

### A. Grounds 1 & 3

Drayton first claims that his "plea-agreement waiver constructively denied [him] the assistance of unconflicted counsel." Doc. 1132 at 4. By "insulat[ing] counsel from counsel's own misbehavior whether negligent or intentional," the waiver "created an actual conflict of interest" that, according to Drayton, violated his Sixth Amendment right to counsel. *Id.*

To find attorney ineffectiveness based on a purported conflict of interest, Drayton must show "first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance." *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). To show an actual conflict, "[a] § 2255 [movant] must show 'inconsistent interests *and* must demonstrate that the attorney made a choice between possible alternative courses of action.'" *Id.* (emphasis added). Proving "adverse effect[s]," on the other hand, requires showing: "(1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and

3

the decision to forego the alternative strategy of defense." *Pegg*, 253 F.3d at 1278. In guilty plea cases, courts look at "whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." *Id.*

No actual conflict existed between Drayton and Hube because of the appeal and collateral attack waivers in his plea agreement. Long has the Eleventh Circuit approved the use of such waivers and never has it found one to inherently generate a conflict. *See United States v. Benitez-Zapata*, 131 F. 3d 1444, 1446 (11th Cir. 1997) (waivers enforced if the court questions the defendant about it or if the record otherwise shows he understood its full significance). The Georgia Supreme Court -- the ultimate arbiter of ethical rules that apply to attorneys practicing in Georgia, including in this Court[2] -- also approves of such waivers, *see*

---

[2] *See* 28 U.S.C. § 530B ("An attorney for the [Federal] Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties. . . ."); O.C.G.A. § 15-2-8(5) (Supreme Court of Georgia has authority to regulate admission of attorneys to practice law in Georgia); *Wallace v. Wallace*, 225 Ga. 102, 107 (1969) ("In 1963 the [Georgia] General Assembly passed an Act (Ga. L. 1963, p. 70) which recites that 'The Supreme Court of this State shall be authorized . . . to adopt rules and regulations for the organization of a unified bar and to define the rights, duties and obligations of members, including payment of a reasonable license fee, and to otherwise regulate and govern the practice of law in this State."); S.D. Ga. L.R. 83.5(d) ("The standards of professional conduct of attorneys appearing in a case or proceeding, or representing a party in interest in such a case or proceeding, are governed by the Georgia Bar Rules of Professional Conduct. . . .").

4

*Allen v. Thomas*, 265 Ga. 518, 520 (1995) ("[W]aivers of the right to appeal and waivers of the right to seek post-conviction relief" each "comport[] with public policy[] and [are] enforceable."), and has never found conflicts. In fact, Fed. R. Crim P. 11(b)(N) expressly contemplates appeal and collateral attack waiver provisions. Doing so would be strange indeed if such provisions violated a defendant's Sixth Amendment rights.[3]

What's more, Drayton has made no showing that, no matter his interests (inconsistent or not), Hube "made a choice between possible alternative courses of action." *Pegg*, 253 F.3d at 1278. In essence, he claims that inconsistent interests alone suffice to prove a conflict and void his plea agreement. That's never been the law and isn't the case here.[4]

---

[3] Many § 2255 movants, Drayton included, cite to *U.S. ex rel. U.S. Attorneys ex rel. Eatern, Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136 (Ky. 2014), to support their conflict of interest claims. That court indeed held that defense attorneys may not ethically advise clients regarding plea agreements that contain collateral attack waivers encompassing ineffective assistance claims. *Id.* at 151. But Kentucky state court decisions do not bind this Court. Nor do they persuade since, in this case, they are based on a reading of Kentucky's state rules of professional conduct that is at odds with how Georgia's Supreme Court interprets this state's rules.

[4] Were that true, Sixth Amendment-level conflicts would beset almost all attorney-client relationships. Take, for example, the attorney who owns stock in Exxon

Regardless, Drayton has always been free -- whether waivers create inherent conflicts or not -- to argue that his attorney was ineffective in negotiating, communicating, or otherwise facilitating the plea bargain itself (*e.g.*, that counsel negligently failed to convey a better plea offer, or lied to or threatened Drayton in some way). So even assuming *arguendo* that counsel's participation here amounts to some sort of ethical conflict, it is beside the point. *United States v. Garst*, 2015 WL 631402 at * 4-5 (D. Kan. Feb. 13, 2015) (rejecting same "inherent conflict of interest" argument since "'a plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the plea or the waiver'") (quoting *United States v. Cockerham*, 237 F.3d 1179, 1183–87 (10th Cir. 2001)).[5]

---

through a mutual fund, but represents a BP executive facing criminal charges related to the Gulf of Mexico oil spill. The attorney's net worth might increase if BP suffered from the litigation and sold assets to Exxon to stay afloat. His interests are in a very real sense at odds with his client's and, under Drayton's theory of conflicts, would preclude representation. Nevertheless, those inconsistent interests could never undergird an ineffective assistance claim unless they prompted the attorney to choose a course of action that adversely affected his client. *See Pegg*, 253 F.3d at 1278.

[5] This reasoning aligns with *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("An ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."), quoted in *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005)

Even if it weren't beside the point, Drayton cannot show that the conflict adversely affected counsel's performance. *See Pegg*, 253 F.3d at 1278. He decided to plead guilty in the face of overwhelming guilt evidence.⁶ By doing so, even with appeal and collateral attack waivers, he avoided a Guidelines recommended sentence of 360 months to life and instead faced a 151-188 month recommendation (and actually received 188 months). PSI ¶ 68. Put differently, "Drayton would have ple[d] guilty whether or not there was a collateral attack waiver in his plea agreement because his guilty plea provided an extraordinary benefit to him in the face of overwhelming evidence of his guilt." Doc. 1114 at 7. Hence, there was no "plausible alternative defense strategy" Drayton could have pursued that "was reasonable under the facts." *Pegg*, 253 F.3d at 1278. His conflict of interest claim thus fails.⁷

---

("It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily.").

⁶ Wiretapped conversations captured Drayton discussing drug sales (PSI ¶ 8); a confidential informant purchased drugs from him while wearing a recording device (PSI ¶ 10); and co-defendants would have testified that Drayton sold drugs. PSI ¶ 8.

⁷ In his reply brief, Drayton attempts to reframe this claim by arguing that he unintelligently pled guilty because his plea agreement contained a waiver provision he didn't understand. Doc. 1155 at 2-3. By shifting the focus away from attorney incompetence, he aims to avoid the *Cuyler/Pegg* conflict of interest test and its demanding "adverse effects" inquiry. *See id.*

In Ground Three, Drayton actually claims that his "guilty plea was constitutionally unintelligent, thus invalid, because he was unaware of

---

That feint won't work. Drayton's opening brief's first claim revolves entirely around attorney ineffectiveness because of a conflict of interest. *See* doc. 1103 at 3 (defining "collateral attack" as one "from the side . . . by claiming that counsel was at fault for the error"); *id.* at 4 (citing *Strickland v. Washington*, 466 U.S. 668 (1984) and *Cuyler* as the legal standards applicable to his claim). Disclaiming that argument now is mere gamesmanship and will not be countenanced. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court." *United States v. Coy*, 19 F.3d 629, 632 n. 7 (11th Cir. 1994) (citation omitted); *see also United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (court need not address issue raised for first time in reply brief), *cert. denied*, 539 U.S. 951, 123 S.Ct. 2628, 156 L.Ed.2d 643 (2003); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief waived); *United States v. Martinez*, 83 F.3d 371, 377 n. 6 (11th Cir. 1996) (declining to consider arguments raised for the first time in a reply brief).").

Nor can Drayton's *pro se* status save him from that result. For starters, Frank Amodeo, a disbarred former attorney who now spends significant time drafting § 2255 motions for other prisoners, *see* www.frankamodeo.com/samples.html, assisted him with his brief. Doc. 1155 at 7. That alone sets this case apart from those where courts liberally construe *pro se* filings. Even if the Court held Drayton to the typical "less stringent standard," *Griffin v. Lockheed Martin Corp.*, 2016 WL 1397707 at * 2 (11th Cir. Apr. 11, 2016); *Tannenbaum v. United States*, 1262, 1263 (11th Cir. 1998) (applying the "less stringent" standard to § 2255 claims), it wouldn't convert an ineffective assistance claim based on a conflict of interest into an "I unintelligently pled guilty" claim (Drayton already presses one of those anyway). And even if it did, an unintelligent plea claim, as discussed in more detail below, nevertheless fails because his signature on the plea agreement and testimony at his plea hearing make clear that he understood the nature of the rights he waived. *See* doc. 788 at 10 (plea agreement signature); doc. 949 at 25-26 (plea hearing transcript; Drayton testified that he understood the appeal and collateral attack waivers in his plea agreement); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

the consequences flowing from the plea-agreement waiver." Doc. 1132.[8]
As discussed above in footnote seven, he knew quite well what rights he gave up, the nature of those rights and the charges against him, and the possible penalties he faced both with and without the plea agreement. Again, he signed his name to the agreement, which itself explained what he gave up and the consequences he faced. *See* doc. 788 at 10.[9] And the district judge thoroughly covered that same ground when he found that Drayton knowingly and intelligently pled guilty. *See* doc. 949 at 18

---

[8] He does *not* claim any attorney misconduct unlike in his attempted re-branding of Ground One.

[9] Drayton signed his name under a passage that read:

> I have read the foregoing Plea Agreement . . . and I understand what it says and means, and by my signature hereunder I swear or affirm *under penalty of perjury* that the matters and facts set forth therein are true, and accurately and correctly state the representations that have been made to me by my attorney and government agents and/or prosecutors, and accurately set for the terms and conditions of the plea agreement that has been reached by my attorney on my behalf and with my permission.

Doc. 788 at 10 (emphasis added).

Drayton is reminded that perjury is a felony and that liars may be prosecuted. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (defendant's falsely subscribing to statement in his habeas petition that he had not previously filed a § 2255 motion was "material" for purposes of perjury prosecution; statement fooled the clerk of the court into accepting the "writ" for filing, and led the magistrate judge to consider its merits until she discovered that the "writ" was a successive § 2255 motion in disguise); *United States v. Dickerson*, CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), cited in *Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012) (collecting sanction cases).

(asked if he had any complaints with Hube's representation, or any other ways in which the judicial system had treated him, Drayton said no); *id.* at 19 (stating that Hube had been truthful at all times and never tried to force him to plead guilty); *id.* at 20 (Q: "Are you satisfied with Mr. Hube and the way he has represented you in this case? A. Yes, sir."); *id.* at 22 (reviewing the possible sentence Drayton faced); *id.* at 25 (reviewing the appeal and collateral attack waivers and ensuring that Drayton understood each); *id.* at 29 ("Q: Do you *fully understand* all rights and procedures . . . that you are giving up by pleading guilty, including your right to an appeal?" A. Yes, sir.") (emphasis added).

Drayton argues that the plea colloquy "does not remedy the defect" caused by Hube's conflict of interest. Doc. 1155 at 5. Instead, it "reveals not a single mention that the plea waiver excuses defense counsel misconduct," or that he waived "his right to seek a writ of habeas corpus." *Id.* Only in an alternate universe could the plea colloquy be read to exclude those two items. The district judge made abundantly clear that the waivers barred Drayton from appealing under any circumstances (including on ineffective assistance grounds) unless the Court sentenced him to an above-Guidelines sentence, or the

Government itself appealed. Doc. 949 at 25-26. He also highlighted that the waiver included collateral attacks, like habeas petitions and § 2255 motions. *Id.* at 25. Most importantly, Drayton affirmed multiple times that he understood the nature of the waivers and the rights he gave up. *Id.* at 25, 29. His conclusory allegations to the contrary cannot suffice to overcome "the strong presumption that . . . statements made under oath at [his] plea colloquy" are true. *Winthrop-Redin*, 767 F.3d at 1217. His "unintelligent-plea" claim thus fails.

### B. Ground 2

Drayton's second claim nominally surrounds "illicit romantic or sexual relations" between the Assistant United States Attorney assigned to this case and the lead case agent investigating Drayton and others in the conspiracy. Doc. 1132 at 3. He believes those relations led the AUSA "not to disclose [to the grand jury] . . . conduct designed to either create or present false or unreliable evidence." *Id.* In particular, says Drayton, the grand jury heard no testimony that connected him to a conspiracy. Doc. 1103 at 11. Instead, the AUSA elicited testimony from the case agent that "during his investigation, [Drayton] was identified as a cocaine and marijuana distributor," but never a conspirator. *Id.* That

omission led to an improper indictment which "ensure[d his] guilty plea." Doc. 1132 at 4.

Drayton's knowing and voluntary guilty plea, however, waived all non-jurisdictional pre-plea claims he may have had. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Keye v. Perry*, 2015 WL 3902330 at * 3 (S.D. Ga. June 24, 2015) ("A knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea.") (citing *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992)), *adopted*, 2015 WL 5116830 (S.D. Ga. Aug. 28, 2015). Because claims involving prosecutorial conduct before a grand jury fall into that basket, *see Tollett*, 411 U.S. at 266 (claim of unconstitutional grand jury

selection procedures provided no ground for "federal collateral relief . . . after a criminal defendant pleads guilty"),[10] ground two also fails.

## C. Ground Four

In his final claim, Drayton contends that Hube provided him with ineffective assistance[11] by misunderstanding the law governing the use of [his prior convictions] to designate him a career offender and increase the commencement point for the court's § 3553(a) analysis." Doc. 1132 at 3. Under both "the categorical and modified categorical approach," says Drayton, his "Georgia convictions fail . . . to qualify as career offender predicates." *Id.* Hube's "miscomprehension resulted in a

---

[10] *See also United States v. Boniface*, 631 F.2d 1228, 1229 (5th Cir. 1980) (guilty plea barred claim that "indictment was defective because the actual indictment was clandestinely constructed by the United States Attorney after the grand jury voted on it and that it was subsequently signed by the Foreman separate and apart from the grand jury"); *United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998) (defendant waived prosecutorial misconduct claims by pleading guilty); *United States v. Simmons*, 763 F.2d 529, 533 (2d Cir. 1985) (defendant's conditional guilty plea did not specifically preserve defendant's prosecutorial misconduct claim).

[11] To prevail on this claim, Drayton:

> must show 'that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.' *Hollis v. Sec'y, Fla. Dep't of Corr.*, 2015 WL 5847258 at * 1 (11th Cir. Oct. 8, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). '[P]erformance is deficient when it falls below an objective standard of reasonableness' and is 'outside the wide range of professionally competent assistance.' *Id.* And prejudice occurs if 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.*

*Murray v. United States*, 2015 WL 7069345 at * 2 (S.D. Ga. Nov. 12, 2015).

failure to object to the [PSI's] conclusions; a failure to argue against the career designation at sentencing; and a failure to raise the sentencing errors on direct appeal." *Id.*

To begin, Hube *did* file extensive objections to Drayton's PSI, including to the career offender recommendation. *See* doc. 762. He argued that the prior drug convictions used as predicate offenses shouldn't qualify because they occurred within two years of each other and almost a decade before Drayton's present arrest, not that they categorically could not qualify. *Id.* at 7-8. That, however, almost certainly is because they categorically *do* qualify as predicates.

Under U.S.S.G. § 4B1.2(b)(2), a "controlled substance offense" (all of Drayton's career offender predicates fall under that designation, not the crime of violence category),[12] is one "punishable by imprisonment . . . exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense." Drayton was convicted of conspiracy to possess

---

[12] Predicate convictions must be either a "crime of violence," or a "controlled substance offense." U.S.S.G. § 4B1.1(a).

marijuana with intent to distribute in 2000 (PSI ¶ 31), possession of marijuana with intent to distribute in January 2002 (PSI ¶ 33), and possession of cocaine with intent to distribute later that year in September. PSI ¶ 34. All of those crimes carry possible prison sentences "exceeding one year," and both cocaine and marijuana are controlled substances. The convictions thus qualify as career offender predicates under § 4B1.1. Hube "miscomprehend[ded]" (doc. 1132 at 3) nothing by not arguing to the contrary, and, in turn, provided effective assistance.[13]

## III. CONCLUSION

Accordingly, Lawrence Drayton's § 2255 motion should be **DENIED**. His motions to amend (doc. 1132) and for an extension of time (doc. 1123) are **GRANTED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb.9, 2009), the Court discerns no COA–

---

[13] Drayton's categorical approach/modified categorical approach (doc. 1132 at 3) argument has no application to controlled substance offense predicates. Those terms refer to methods courts use to determine whether certain prior convictions qualify as crimes of violence. *See, e.g., Descamps v. United States*, ___ U.S. ___, 133 S.Ct. 2276, 2282 (2013) (explaining the difference in the two approaches and under what circumstances each is used). He does have one possible crime of violence predicate (during his January 2002 arrest, in addition to his drug related conduct, Drayton obstructed a law enforcement officer by "striking [the agent] repeatedly with his fists and elbows," PSI ¶ 33), but whether it qualifies doesn't matter because of his three controlled substance offenses. *See* PSI ¶¶ 31, 33, 34.

worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1), (2); Rule 11(a) of the Rules Governing Section 2254 Cases ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

**SO REPORTED AND RECOMMENDED**, this  9th  day of May, 2016.

　　　　　　　　　　　　　　　　_/s/ G.R. Smith_____
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE
　　　　　　　　　　　　　　　　SOUTHERN DISTRICT OF GEORGIA